NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DWIGHT MORRIS,<br><br>     Plaintiff,<br><br>v.<br><br>UNITED POSTAL SERVICES, et al.,<br><br>     Defendants. | Civil Action No.: 08-2035 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

  This matter comes before the Court on Defendant United Postal Services's ("UPS") motion for summary judgment.  In his Complaint Mr. Morris brings claims against UPS for: (1) violations of the United States and New Jersey Constitutions; (2) discrimination, harassment , wrongful termination, and constructive discharge under the New Jersey Law Against Discrimination ("NJLAD"); (3) false imprisonment; (4) negligent supervision, hiring, training and retention; (5) negligent infliction of emotional distress; (6) negligence acts or omissions; and (7) intentional infliction of emotional distress.  UPS moves for summary judgment on all claims.  The Court has considered the submissions in support of and in opposition to the motion and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, UPS's motion is granted in part and denied in part.

**I.  BACKGROUND**

  In 2005, Plaintiff Dwight Morris gained temporary employment with Defendant

UPS through his primary employer, a staffing firm named Adecco. (UPS's Stmt. of Mat'l Facts ¶¶ 1-2 [hereinafter "Def.'s Fact Stmt."].) During his employment with UPS, Mr. Morris performed the role of a high value clerk, first at UPS's Parsippany facility and later at its Saddle Brook facility. (Id. ¶¶ 3, 7.) UPS controlled every aspect of Mr. Morris's employment; UPS trained Mr. Morris, had the authority to fire him, "set his hours, [ ] implemented his job requirements, and required him to submit time sheets for [his] work." (Pl.'s Opp'n to Summ. J., at 7-8 [hereinafter "Pl.'s Opp'n"].)[1] While at UPS's Saddle Brook facility, Mr. Morris worked with one other high value clerk, Tanya Powell. (Def.'s Fact Stmt. at ¶ 8.)

In early September 2005, UPS received reports that high value packages were missing. (Id. at ¶¶ 10, 12, 24.) Based on these reports, Axel Carrion, UPS's Security Supervisor, began an internal investigation. (Id. at ¶ 15.) The investigation included the review of certain documents which revealed that the missing items were delivered to an area that only Mr. Morris and Ms. Powell were responsible for. (Id. at ¶¶ 8, 16.) Mr. Carrion interviewed Mr. Morris about the missing items on two occasions. (Id. at ¶ 19.) Mr. Carrion reviewed the status of the investigation with Gerald Scally, a Security Manager at the Saddle Brook facility, and then both Mr. Carrion and Mr. Scally discussed the situation with UPS's District Security Manager, Chris Wheeler. (Id. at ¶¶ 26-27.) "[Mr.] Wheeler instructed Scally to interview [Mr. Morris] and Powell." (Id. at ¶ 29.) Mr. Carrion and Mr. Scally subsequently interviewed Mr. Morris together. (Id. at ¶ 30.)

During the first interview, which lasted approximately thirty minutes and was

---

[1] Mr. Morris did not provide a counter-statement of facts pursuant to Local Civil Rule 56.1. However, to the extent that Mr. Morris provided additional facts, with supporting citations, in his opposition brief, they have been considered.

behind closed doors, Mr. Morris asserts that he was never told that he could leave or that he did not have to answer any of the questions. (Pl.'s Opp'n, at 9-10.) Mr. Morris alleges that

> [i]n addition to being accused of the thefts, [he] was asked many intrusive and offensive personal questions, including whether he had a drug problem, gambling debts, owed child support payments, whether he owned his home, and his general financial situation. He was also asked additional questions, unrelated to the theft, ranging from his religious view, place of birth, and nationality.

(Id. at 10 (citations omitted).) During the second interview, "Mr. Morris . . . asked permission to leave the interrogation room," but "was told he could not leave until the interrogation was over." (Id. at 11.) Mr. Morris alleges that "[Mr.] Carrion resorted to threats of police involvement, and suggestions of incarceration." (Id.) Mr. Morris also alleges that the third and final interview was "more intense and included numerous verbal and physical assaults on [him]." (Id. at 12.)

Mr. Morris asserts that during the interviews he "felt a lot of fear" and "was worried about jail throughout the entire interrogation, and still thinks about it." (Id. at 14.) However, he testified that he did not seek assistance from any medical professional such as a doctor or psychologist, did not take any medication, and did not suffer any physical injury as a result of the interrogation. (Cert. of Edward P. Lynch [hereinafter "Lynch Cert."], Ex. B, Dep. of Mr. Morris, Tr. 114:12-115:23, 216:17-22.) He further testified that, after the incident, he continued to carry on his normal activities. (Id. at 216:21-22.) Mr. Morris asserts that although he "expressed interest in returning to UPS, he eventually decided against it because he was too upset about what had occurred." (Pl.'s Opp'n, at 14.) He "decided to leave the employment of Adecco and never [] return[ed] to UPS." (Id.) It is undisputed that Mr. Morris did not steal the high value items. (Br. in Supp. of UPS's

3

Mot. for Summ. J., at 11.)

## II.  LEGAL STANDARD

A court shall grant summary judgment under Rule 59(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party first must show that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. The non-moving party must offer specific facts that establish a genuine issue of material fact and may not simply rely on unsupported assertions, bare allegations, or speculation. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). Also, the Court must consider all facts presented and the reasonable inferences drawn from them in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

## III.  DISCUSSION

Mr. Morris "concedes Defendant's arguments as to the [Constitutional and NJLAD claims] and presents no opposition to that aspect of the pending motion." (Pl's. Opp'n, at 20.) Therefore, UPS's motion for summary judgment is granted as to Mr. Morris's Constitutional[2] and NJLAD claims. Additionally, in its moving brief, UPS argued that the false imprisonment claim fails solely because it is duplicative of the NJLAD claim; it did

---

[2] UPS removed this matter from state court, invoking this Court's federal question jurisdiction. Upon dismissal of Mr. Morris's Constitutional claims, only state causes of action remain. Given the stage of this litigation, being past discovery and at summary judgment, and the issues presented, the Court elects to exercise its supplemental jurisdiction over Mr. Morris's remaining state law claims. See Growth Horizons, Inc. v. Del. County Pa., 983 F.2d 1277, 1284 (3d Cir. 1993).

4

not, however, argue that Mr. Morris's false imprisonment claim also failed on the merits. In its reply brief, UPS states that "[b]ecause plaintiff has withdrawn his NJLAD causes of action, UPS' grounds for summary judgment on his false imprisonment claim . . . are moot." (Reply Br. in Supp. of UPS's Mot. for Summ. J., at 2 n.1 [hereinafter "Def.'s Reply Br."].) Thus, UPS's motion for summary judgment as to Mr. Morris's false imprisonment claim is denied. Therefore, the only claims that remain to be considered are Mr. Morris's negligence and intentional infliction of emotional distress claims.

### A.     Negligence Claims

Mr. Morris asserts three negligence claims: negligent hiring and supervision, negligent infliction of emotional distress, and a general negligence claim. UPS argues that each of the negligence based claims are barred by the New Jersey Workers' Compensation Act ("NJWCA"), N.J. Stat. Ann. § 34:15-8. Mr. Morris does not present a counter argument to this position in his opposition brief; instead, he argues the merits of each of his negligence claims.

The NJWCA provides in pertinent part:

> If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.

N.J. Stat. Ann. § 34:15-8. New Jersey courts have found that the NJWCA "represents the bargain that was struck  between employers and employees concerning workplace injuries, whereby employers shoulder the expense of workers' injuries arising out of the performance of work duties." Basil v. Wolf, 935 A.2d 1154, 1164 (N.J. 2007). This bargain means that

> [the employer] gains immunity from common-law suit, even though he be

5

> negligent, and is left with a limited and determined liability in all cases of work-connected injury. On the other hand, the employee foregoes his right to sue his employer for negligence, and to obtain the common law's measure of damages in cases where fault could be shown, but he gains a speedy and certain, though smaller, measure of damages for all work-connected injuries regardless of fault.

Dudley v. Victor Lynn Lines, Inc., 161 A.2d 479, 484 (N.J. 1960). "Thus, the workers' compensation remedy is, in essence, an agreement between employer and employee, . . . which renders the workers' compensation remedy an exclusive one." Basil, 935 A.2d at 1164.

Because the NJWCA bars an employee's claims of negligence against his employer, the question is whether Mr. Morris was an employee of UPS for purposes of the Act. New Jersey courts liberally construe the term "employee" so that a maximum number of cases will fall within the NJWCA's grasp. See Marino v. Indus. Crating Co., 358 F.3d 241, 244 (3d Cir. 2004). This liberal construction "is true when a plaintiff seeks its protection, as well as 'when he attempts to have himself excluded from the coverage of the act.'" Id. (quoting Santos v. Std. Havens, 541 A.2d 708, 713 (N.J. Super. Ct. App. Div. 1988)). Furthermore, "New Jersey courts have made it clear that an employee may have several employers for [NJ]WCA purposes, any one of which may be held liable for workers' compensation benefits when that employee is injured." Id.

New Jersey courts and the Third Circuit utilize a five factor test, "in analyzing situations in which an employee might be found to have, in addition to his primary employer, an additional 'special employer.'" Id. The five factors are:

> 1) whether there is an express or implied contract for hire between the employee and the employer; 2) whether the work being done is that of the employer; 3) whether the employer has a right to control the details of the work; 4) whether the employer pays the employee's wages or benefits; and 5) whether the employer can hire or fire the employee.

6

Id. (citing Blessing v. T. Shriver & Co., 228 A.2d 711, 713 (N.J. Super. Ct. App. Div. 1967)). Although "[n]one of these factors is necessarily dispositive, and not all five must be satisfied in order for a special employment relationship to exist," many courts stress the significance of "the third factor-the right to control." Id. (citing Volb v. Gen. Elec. Capital Corp., 651 A.2d 1002, 1005 (N.J. 1995)).

Mr. Morris states that "every aspect of his job was controlled by [UPS]." (Pl.'s Br., at 7.) He further states that:

> UPS trained him in his job as a high value clerk. They set his hours, they implemented his job requirements, and required him to submit time sheets for this work. They also had the power to fire him. As a UPS temporary employee, Mr. Morris was admittedly entitled to the benefit of all UPS company policies, guidelines, and protections.

(Id. at 7-8 (citations omitted).) Based on Mr. Morris's own characterization of his employment with UPS, this Court finds that UPS is an employer of Mr. Morris for purposes of the NJWCA. Therefore, Mr. Morris's negligence claims are barred. UPS's motion for summary judgment is granted for these claims.

### B. Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress a "plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." Tarr v. Ciasulli, 853 A.2d 921, 924 (N.J. 2004) (quoting Buckley v. Trenton Saving Fund Soc'y, 544 A.2d 857, 863 (1988)). Here, UPS argues that Mr. Morris has not suffered "severe" distress. (Def.'s Reply Br., at 13-14.) Mr. Morris correctly argues that the severity of distress is generally an issue of fact, however, "[t]he severity of the emotional distress raises questions of both law and fact." Buckley, 544 A.2d at 864. "Thus, the court decides whether as a matter of law such emotional distress

7

can be found, and the jury decides whether it has in fact been proved." Id.

In order for Mr. Morris's emotional distress claim to proceed, this Court must be presented with evidence, medical or otherwise, from which it can reasonably be found that the distress suffered was "so severe that no reasonable [person] could be expected to endure it." Tarr, 853 A.2d at 925 (alteration in original) (quoting Buckley, 544 A.2d at 863); (see also Turner v. Wong, 363 N.J. Super. 186, 200 (App. Div. 2003) ("Severe emotional distress is a severe and disabling emotional or mental condition which may be generally recognized and diagnosed by trained professionals."). In Buckley, allegations that the plaintiff suffered "aggravation, embarrassment, an unspecified number of headaches, and loss of sleep" was not enough, as a matter of law, to sustain a claim of severe emotional distress. 544 A.2d at 864; see also Griffin v. Tops Appliance City, Inc., 766 A.2d 292, 298 (N.J. Super. Ct. App. Div. 2001) (holding that a plaintiff could not sustain his claim, although he felt terrible and devastated, because he did not suffer from headaches, had no difficulty sleeping, continued to perform his normal routine, and did not seek medical help or offer the trial court an expert opinion); Aly v. Garcia, 754 A.2d 1232, 1236-37 (N.J. Super. Ct. App. Div. 2000) (holding that allegations that the plaintiff was "acutely upset" was not enough to sustain the plaintiff's claim because the distress "must be sufficiently substantial to result in physical illness or serious psychological sequelae").

In this case, Mr. Morris testified that after the incident he carried on with his normal routine. He also testified that he: (1) did not seek assistance from any medical professional such as a doctor or psychologist; (2) did not suffer any physical injury as a result of the interrogation; and (3) has neither suffered from nor been diagnosed with a medical condition as a result of the interrogation. The sum total of his allegations

8

regarding his emotional distress was that he "felt a lot of fear . . [and was] worried about jail throughout the entire interrogation" and "still thinks about it." Such allegations, without more, do not rise to the level of severity necessary to sustain a claim of emotional distress. (Pl.'s Opp'n, at 14.) Therefore, this Court grants UPS's motion for summary judgment as to Mr. Morris's claim for intentional infliction of emotional distress.

IV. **CONCLUSION**

For the foregoing reasons, UPS's motion for summary judgment is granted in part and denied in part. It is granted with respect to Mr. Morris's Constitutional, NJLAD, negligence, and intentional infliction of emotional distress claims. The motion is denied with respect to Mr. Morris's false imprisonment claim. An appropriate Order accompanies this Opinion.

DATED: November 23, 2009            /s/ Jose L. Linares
                                    JOSE L. LINARES
                                    UNITED STATES DISTRICT JUDGE

.